IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 13-07491 (ESL) |
| JEANS.COM, INC. | |
| | CHAPTER 11 |
| Debtor | |

OPINION AND ORDER

This case is before the court upon the *Motion to Dismiss and Requesting Order Barring Debtor from Re-filing for Bankruptcy* filed by DDR Norte LLC, S.E., DDR Palma Real LLC, S.E., DDR Atlántico LLC, S.E., and DDR Rio Hondo LLC, S.E. (jointly and collectively referred to as "DDR") (the "*Motion to Dismiss*", Docket No. 22) and the *Opposition* thereto filed by the Debtor (Docket No. 49). On October 18, 2013 the court held a hearing to consider, *inter alia*, the evidence to support DDR's *Motion to Dismiss*. See Docket Nos. 55 (Audio File of that hearing) and 64 (*Minute Entry*). For the reasons stated below, the court denies DDR's *Motion to Dismiss*.

Factual and Procedural Background

On March 9, 2012, the Debtor filed a Chapter 11 bankruptcy petition in the case captioned In re Jeans.com, Inc, Case No. 12-01777 (ESL) (the "First Case").

On February 19, 2013, the court held a hearing to consider the approval of the Disclosure Statement. The court ordered the Debtor to either file an amended disclosure statement or supplement the filed disclosure statement within forty five (45) days. See Docket No. 288 of the First Case.

On May 8, 2013, the court issued an *Order to Show Cause Re: Dismissal* (Docket No. 328 of the First Case) for the Debtor to show cause within twenty-one (21) days as to why the case should not be dismissed for failure to file a Disclosure Statement and Plan.

On May 13, 2013, the Debtor filed a *Motion in Compliance with Order to Show Cause* (Docket No. 334 of the First Case) averring that it had been waiting for the unsecured creditors

committee's input prior to filing an Amended Disclosure Statement.   The Debtor further requested 30 additional days to file the Amended Disclosures Statement, which the court granted on May 14, 2013 (Docket No. 335 of the First Case).

On June 17, 2013, the court issued an *Order* (Docket No. 357 of the First Case) dismissing the case for failure to file the Amended Disclosure Statement.

On June 18, 2013, the Debtor filed a *Urgent Motion for Reconsideration* (Docket No. 359 of the First Case) requesting the court to reconsider its previous *Order* (Docket No. 357 of the First Case) under Fed. R. Civ. P. 59.  Once more, Debtor requested fourteen (14) days to file the Amended Disclosure Statement.

On June 19, 2013, the unsecured creditors committee filed an *Opposition to Debtor's Request for Reconsideration of Dismissal Order* (Docket. No. 360 of the First Case) arguing that the Debtor had failed to provide adequate documentation regarding the credit cards and that the Debtor had breached a court order by using four (4) credit cards instead of the two (2) it was authorized to use (Docket No. 66 of the First Case).  The unsecured creditors committee requested that Debtor explain the post-petition accumulation of debt owed to the IRS, referring to Claims Register No. 98-3 of the First Fase.  The unsecured creditors committee also stated that it had always acted in an amicable fashion and that the dismissal of the case was warranted by Debtor's actions.

On July 23, 2013, the court entered an *Opinion and Order* denying the Debtor's *Motion for Reconsideration*.  <u>See</u> Docket No. 372 of the First Case.

On June 24, 2013, the Debtor filed the *Amended Disclosure Statement and Amended Plan for Reorganization* (Docket Nos. 366 and 367 of the First Case).

On September 11, 2013, the Debtor filed the instant Chapter 11 bankruptcy petition. <u>See</u> Docket No. 1.

On September 17, 2013, the Debtor filed a *Motion Requesting Approval to Use Credit Cards* (the "*Motion to Use Credit Cards*", Docket No. 12).

Also on September 17, 2013, the Debtor filed a *Motion for Entry of (A) Bridge Order and (B) Final Order (I) Prohibiting Utilities from Discontinuing, Altering or Refusing Service, (II) Establishing Procedures for Providing Deposits to Utilities, (III) Deeming Utilities to Have Adequate Assurance of Payment, and (IV) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. Sections 105 (A) and 366* (the "*Motion for Utilities*", Docket No. 13).

On September 20, 2013, the Debtor filed a *Motion Requesting Authorization to Denominate Critical Vendors* (the "*Motion to Denominate Critical Vendors*", Docket No. 16)

On September 27, 2013, DDR filed the *Motion to Dismiss* (Docket No. 22) claiming that the instant bankruptcy petition was filed in bad faith, that nothing had changed between the two (2) month period between the dismissal of the First Case and the filing of the instant one, and therefore this case should be dismissed with a bar to re-file.

On September 30, 2013, the court entered an *Order and Notice* (Docket No. 32) scheduling a hearing to consider DDR's *Motion to Dismiss* and the Debtor's motions to use credit cards, utilities and critical vendors for October 18, 2013 at 10:30 a.m.

On October 3, 2013, DDR filed an *Opposition to Debtor's Motion for Authorization to Pay Critical Trade Vendors* (Docket No. 34) arguing that the Debtor had not advanced any evidence whatsoever to support its motion and that it was actually a request to authorize post-petition financing outside the ordinary course of business, despite Debtor's failure to comply with the requirements of section 364 of the Bankruptcy Code, as well as Fed. R. Bankr. P. 4001 and Local Bankr. R. 4001-2.

On October 10, 2013, PREPA filed an *Opposition to Debtor's Motion and Request for Adequate Protection under 11 U.S.C. § 366* (Docket No. 40).

On October 15, 2013, DDR and the Debtor filed a *Joint Agreed Deadlines to Respond to DDR's Motion to Dismiss and Opposition to Pay Critical Vendors* (Docket No. 44).

On October 17, 2013, the Debtor filed an *Opposition [to DDR's] Motion to Dismiss* (Docket No. 45) arguing that the instant case was filed in good faith and that there had been a

change in circumstances that warrant its filing. Also on October 17, 2013, the Debtor filed a *Reply to Opposition to Motion Requesting Authorization to Denominate Critical Vendors* (Docket No. 46) sustaining that the products and services provided by the critical vendors are necessary for it to continue operating and turn a profit. On that same day, the Debtor also filed a *Supplement to Opposition to [DDR's] Motion to Dismiss* (Docket No. 47) stating that it had received several letters from several of its unsecured creditors in support of its reorganization. The Debtor also argued that these creditors were not represented by counsel but had asked it to submit said letters to the court in order for the court to take their positions into account.

Also on October 17, 2013, creditors BPP Retail Properties, LLC, PDCM Associates, S.E., Regency Park Associates, S.E. and Yabucoa Development, S.E. filed *Motions for Payment of Administrative Expenses* (Docket Nos. 50, 51, 52 and 53).

On October 18, 2013, the court held the scheduled hearing. See Docket Nos. 55 (Audio File) and 64 (*Minute Entry*). During the hearing, the court made the following rulings:

1. DDR's *Motion to Dismiss* was taken under advisement. A separate opinion and order will be issued to rule upon it;

2. the Debtor and PREPA were ordered to file an agreement within 14 days and PREPA;

3. the Debtor's *Motion Requesting Approval to Use Credit Cards* (Docket No. 12) was granted as unopposed; and

4. the *Motion Requesting Authorization to Denominate Critical Vendors* (Docket No. 16) would be granted through a separate order. The court partially disagreed with the legal assumptions made by the Debtor in regards to In re Kmart Corp., 359 F.3d 866 (7th Cir. 2004), but the evidence during the hearing supports the request for critical vendors as to the way they were designated and in the amounts they were designated as they have been budgeted to be paid in the projections prepared (capped at $5,000).

See the *Minute Entry* (Docket No. 64, pp. 7-8).

Applicable Law and Analysis

DDR's *Motion to Dismiss* is premised on the following grounds: (a) there is sufficient "cause" to dismiss under 11 U.S.C. § 1112(b) for the Debtor's lack of good faith in filing the instant case only two months after the dismissal of the First Case; and (b) the Debtor's attempts to leverage its prior disobedience of court orders in the First Case, and non-compliance with its various legal duties warrant the court to bar re-filing. DDR argues the Debtor's "lack of good faith" as follows:

a. the First Case was dismissed due to the Debtor's continued disregard of the court's various deadlines and orders, its inability to effectively move towards reorganization (such as failing to timely file a legally sufficient Disclosure Statement and Plan), its failure to cure its numerous administrative and operational deficiencies as raised, among others, by the unsecured creditors committee (such as the Debtor's apparent unauthorized use of credit cards and Debtor's failure to produce the corresponding addendums and/or amendments to certain lease agreements), and Debtor's failure to timely file its monthly operating reports ("MOR");

b. the Debtor's failure to demonstrate which of these deficiencies (if any) have been cured within the two-month period between the dismissal of the First Case and the filing of the instant case;

c. the Debtor's lack of valid reorganization purpose as the crucial issues which impeded reorganization in the First Case (such as the identification of Debtor's source of funding for the purchase of merchandise for its operations, the submission of the alleged addendums to certain of Debtor's lease contracts, whether Debtor's income is sufficient to propose a Plan of reorganization, and Debtor's failure to comply with the provisions of the Code), remain continuing and have not been cured to date. Particularly, and as raised by DDR at the First Case (Docket No. 239 of the First Case), Debtor is still utilizing the same trite

strategy of shielding itself behind the guise of its related company Felix Fanti & Michael J. Silva Enterprises, Inc. in order to avoid making payment as to the leases for which Debtor itself continues to occupy and derive direct economic benefit;

d. the instant case was filed exclusively as a litigation tactic given that, through the dismissal of the First Case (which dismissal DDR sustains was a direct result of Debtor's own negligence and inability to reorganize, as well as Debtor's failure comply with court orders and provisions of the Bankruptcy Code), Debtor was able to curtail the efforts of its two more active and vocal creditors in the First Case, that is, the unsecured creditor committee and DDR. By filing this new bankruptcy proceeding a mere two (2) months since the dismissal of the First Case, the Debtor was attempting to eliminate the various concerns raised by the unsecured creditor committee and DDR, while at the same time frustrating DDR's collection efforts of its administrative expenses; and

e. the instant case was filed as a means to frustrate the legitimate efforts of Debtor's creditors in enforcing their applicable non-bankruptcy law remedies, including the continuation of DDR's collection and eviction actions against the Debtor in the Puerto Rico Court of First Instance.

See DDR's *Motion to Dismiss* (Docket No. 22, pp. 8-10).

During the October 18, 2013 hearing, the court ruled that it would apply the analysis in In re Costa Bonita Beach Resort, 479 B.R. 14 (Bankr. D.P.R. 2012), to consider the alleged lack of good faith as a cause for dismissal under 11 U.S.C. § 1112(b): "[t]he determination of whether the movant has established *prima facie* that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances." Id. at 40. Furthermore:

[t]he totality of the circumstances test cannot be reduced to a mechanical checklist (irrespective of the chapter or whether it is in the filing of the petition and/or the

-6-

confirmation of the plan). See Berliner v. Pappalardo (In re Puffer), 674 F. 3d 78, 81 (1st Cir. 2012) ("The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor here to canvass the field and catalogue the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith"). The First Circuit has determined that, "in all events, good faith is a concept not a construct. Importantly, it is a concept that derives from equity. This matters because equitable concepts are particularly insusceptible to *per se* rules." In re Puffer, 674 F. 3d at 82. Thus, this court, in conformity with the determinations of the First Circuit in In re Puffer rejects the mechanical checklist approach for a determination of lack of good faith (or bad faith) for all cases, irrespective of whether they are SARE cases. Good faith is an abstract idea generalized from particular circumstances and not a working assumption. In re Costa Bonita Beach Resort, 479 B.R. at 40.

The legislative history of 11 U.S.C. § 1112(b) reveals that Congress intended to invest the bankruptcy court with "wide discretion … to make an appropriate disposition of the case" and "to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." H.R. Rep. No. 595, 95th Cong., 2d Sess. 406, reprinted in 1978 U.S.C.C.A.N. 5963, 6361-62. Also see De Jounghe v. Lugo Mender (In re De Jounghe), 334 B.R. 760, 770 (B.A.P. 1st Cir. 2005); In re Torres de Jesus, 2012 Bankr. LEXIS 307 at *38, 2012 WL 195516 *12 (Bankr. D.P.R. 2012).

In the instant case, the parties were afforded the opportunity to present evidence to support their respective contentions at the October 18, 2013 hearing. After considering the evidence presented by DDR, the court initially ruled that "the events leading to the dismissal of the First Case and the timing of the filing of the instant subsequent petition, in light of the emergency motions filed regarding the use of credit cards and for payment of critical vendors, the testimony that the Debtor continues to fail to make timely payments to DDR and the motions for payment of administrative expenses (Docket Nos. 50, 51, 52 and 53), are sufficient to establish a *prima face* showing of bad faith or lack of good faith, which therefore shifts to the Debtor the burden of establishing that the instant petition was filed in good faith." *Minute Entry*, Docket No. 64, pp. 4-5.

The Debtor then presented its evidence to sustain that the instant case was not filed in bad faith or lacking good faith. Its first witness was Mr. Jaime Acosta, Debtor's comptroller,

whose duties include the financial and accounting responsibilities of the corporation. Mr. Acosta explained the events leading up to the Debtor's bankruptcy petition in the Frist Case, including the following factors: banking problems, vendors not giving credit (which was essential to the Debtor's business), no manufacturing in Puerto Rico since the 1980's, lack of liquidity, line of credits with Eurobank, the foreclosing of Eurobank by the FDIC and subsequent acquisition by Oriental, who requested additional collateral. He further declared that he was the culprit of the late filings of the MORs and disclosure statement in the First Case and explained that he was unable to timely prepare them for personal reasons, which he satisfactorily detailed, and also because the U.S. Trustee did not allow the use of electronic banking for the company, which translated to excessive manual reconciliation of the 30 stores on a daily basis by himself, because he had no support staff. See *Minute Entry*, Docket No. 64, p. 5.

The Debtor also called Mr. Michael Silva, its president, to the witness stand. Mr. Silva was candid in acknowledging that he was not aware that he needed to change the leases that were being held by Fanti & Silva Enterprises to the Debtor's name, and declared that Fanti & Silva Enterprises did not coexist with Jeans.com because, except for some old leases, financially everything went to Jeans.com, Inc. He also explained how Jeans.com, Inc. was in no way created as a scheme to defraud the landlords: they simply liked the catchier name. He also declared that he did not want the First Case to be dismissed because no one wants to go through these proceedings twice, that it has been hard in the market and that the dismissal of the First Case only created disappointment in the creditors that wished the Debtor to re-emerge. In addition, he indicated that he could not prepare the financial information required in the MORs of the disclosure statement because he relies on Mr. Jaime Acosta and he would not even know how to prepare them. He also testified that he met continuously with the unsecured creditors committee during the First Case under the encouragement of the court to attempt to reach agreements, but that those efforts turned hopeless and the disclosure statement kept on getting delayed so they could make changes resulting from the different attempts to reach agreements.

Mr. Silva also stated that the Debtor filed the instant second bankruptcy petition because he did not want to have any personal lawsuits on his personal guarantees, and that the Debtor is really bankrupt and needs the protection of the court. See *Minute Entry*, Docket No. 64, pp. 6-7.

The court also finds that both Mr. Acosta and Mr. Silva presented credible testimonies regarding the deficiencies of the First Case, including the late filings of MORs and the disclosure statement, and the filing of the instant one. Therefore, upon the evidence presented by the Debtor, and in consideration to the totality of the circumstances of the instant case, the court finds that the Debtor has satisfactorily demonstrated to the court that the instant case was not filed in bad faith or lacking good faith.

Conclusion

In view of the foregoing, the DDR's *Motion to Dismiss* (Docket No. 22) is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 8th day of November, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge

-9-