IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 13-07491 (ESL) |
| JEANS.COM, INC. | |
| Debtor | CHAPTER 11 |

OPINION AND ORDER

This case is before the court upon the Debtor's *Motion Requesting Authorization to Denominate Critical Vendors* (the "*Motion to Denominate Critical Vendors*", Docket No. 16) and the *Opposition to Debtor's Motion for Authorization to Pay Critical Trade Vendors* (Docket No. 34) filed by creditors DDR Norte LLC, S.E., DDR Palma Real LLC, S.E., DDR Atlántico LLC, S.E., and DDR Rio Hondo LLC, S.E. (jointly and collectively referred to as "DDR"). For the reasons stated below, the Debtor's *Motion to Denominate Critical Vendors* is hereby granted.

Factual and Procedural Background

The Debtor filed the instant Chapter 11 bankruptcy petition on September 11, 2013. See Docket No. 1.

On September 20, 2013, the Debtor filed the *Motion to Denominate Critical Vendors* (Docket No. 16) alleging that several of the services and products offered by "critical vendors" are indispensable for its operations and reorganization and that granting the payment of their pre-petition amounts would benefit all parties in interest. On September 30, 2013, the court entered an *Order and Notice* (Docket No. 32) scheduling a hearing to consider, *inter alia*, the Debtor's motions to use credit cards, utilities and critical vendors for October 18, 2013 at 10:30 a.m. On October 3, 2013, DDR filed an *Opposition to Debtor's Motion for Authorization to Pay Critical Trade Vendors* (Docket No. 34) arguing that the Debtor had not advanced any evidence whatsoever to support its motion and that it was actually a request to authorize post-petition financing outside the ordinary course of business, despite Debtor's failure to comply

with the requirements of section 364 of the Bankruptcy Code, as well as Fed. R. Bankr. P. 4001 and Local Bankr. R. 4001-2. DDR also contends that Section 105 of the Bankruptcy Code does not authorize payments of pre-petition debts to critical vendors. On October 17, 2013, the Debtor filed a *Reply to Opposition to Motion Requesting Authorization to Denominate Critical Vendors* (Docket No. 46) sustaining that the products and services provided by the critical vendors are necessary for it to continue operating and turn a profit.

On October 18, 2013, the court held the scheduled hearing. See Docket Nos. 55 (Audio File) and 64 (*Minute Entry*). The court ruled, *inter alia*, that the *Motion Requesting Authorization to Denominate Critical Vendors* (Docket No. 16) would be granted through a separate order. The court partially disagreed with the legal assumptions made by the Debtor in regards to In re Kmart Corp., 359 F.3d 866 (7th Cir. 2004), but determined that the evidence during the hearing supported the request for critical vendors as to the way they were designated and in the amounts they were designated as they have been budgeted to be paid in the projections prepared (capped at $5,000 per month). See the *Minute Entry* (Docket No. 64, pp. 7-8).

### Jurisdiction

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### Applicable Law and Analysis

*(A)    Origins of Payments to Critical Vendors*

Chapter 11 debtors usually seek to have the issuance of critical vendor orders to convince creditors to continue to do business with them throughout the Chapter 11 reorganization. These orders, commonly known as "critical vendor orders", authorize the payment of certain pre-petition liabilities because of the alleged "critical nature" of certain suppliers, goods and services in order to preserve the on-going concern value of the debtor's business. See Robert A. Morris, The Case Against Critical Vendor Motions, 22-Sep Am. Bankr. Inst. J. 30, 30 (2003). These orders have been widely criticized because they seem to

contravene the central policy of the Bankruptcy Code as established in <u>Begier v. IRS</u>, 496 U.S. 53, 56 (1990): "[e]quality of distribution among creditors". <u>See</u> Alan N. Resnick, <u>The Future of the Doctrine of Necessity and Critical-Vendor Payments in Chapter 11 Cases</u>, 47 B.C.L. Rev. 183, 183 (2005).

There is currently no statutory provision in the Bankruptcy Code that expressly authorizes the payment of pre-petition debts before the confirmation of a Chapter 11 plan of reorganization. Moreover, there is no statutory definition of a "critical vendor". <u>See</u> Christopher D. Hunt, <u>Not-So-Critical Vendors: Redefining Critical Vendor Orders</u>, 93 KY. L.J. 915, 924 (2004/2005); Robert A. Morris, <u>The Case Against "Critical Vendor" Motions</u>, 22- Sep Am. Bankr. Inst. J. at 30. Critical vendor orders have become a generally accepted practice rationalized under the "doctrine of necessity". Robert A. Morris, <u>The Case Against "Critical Vendor" Motions</u>, 22- Sep Am. Bankr. Inst. J. at 30. "The recognition and application of the 'doctrine of necessity', especially with respect to the treatment of so-called 'critical vendors', have been the subject of controversy in Chapter 11 reorganization cases in recent years. The 'doctrine of necessity' is a judge-made rule that courts rely upon to justify permitting a debtor in possession in a Chapter 11 case, prior to the confirmation of a plan of reorganization, to pay certain creditors the full amount of their pre-bankruptcy [petition] unsecured claims. This special treatment is, in theory, reserved for those vendors and other creditors who are critical to the survival of the debtor because of the goods or services they provide." Alan N. Resnick, <u>The Future of the Doctrine of Necessity and Critical-Vendor Payments in Chapter 11 Cases</u>, 47 B.C.L. Rev. at 183-184. The main principle behind critical vendor orders is that "in certain situations, [they are] necessary for the survival of the debtor's business and for the successful reorganization of the debtor. This, in turn, inures to the benefit of all parties in interest, including employees who keep their jobs, vendors and others who may be dependent on the continuing existence of the debtor for future business, equity holders who may reap economic benefits when the business is rehabilitated, and general unsecured creditors whose recovery will be based on the going concern value of the reorganized business, rather than on the scrap value

of assets resulting from forced liquidation at auction sales." Id. at 185-186.  This doctrine is usually sought under the bankruptcy court's equitable powers established in 11 U.S.C. § 105. See Hon. Nancy C. Dreher, Hon. Joan N. Feeney and Michael S. Stepan, Esq., Bankruptcy Law Manual, Volume 1 § 2:22 (2012-1), p. 197.   Section 105 establishes that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

The "doctrine of necessity" finds its origin in nineteenth-century railroad receivership cases, along with the doctrine of the "six-month rule".  See B&W Enter. Inc. v. Goodman Oil Co. (In re B&W Enter. Inc.), 713 F.2d 534, 536 (9th Cir. 1983) (discussing the origins of the doctrine of necessity and the parallel doctrine called the "six months rule"); In re Boston & Me. Corp., 634 F.2d 1359, 1366 (1st Cir. 1980) (also discussing the origins of the doctrine of necessity).  The two similar doctrines developed coetaneously.  Railroad receiverships in the late 1800's recognized an equitable rule of priority, known as the "six months rule", which authorized receivers to pay the unpaid claims of "operating creditors" arising within the six-month period immediately preceding the receivership case.  Alan N. Resnick, The Future of the Doctrine of Necessity and Critical-Vendor Payments in Chapter 11 Cases, 47 B.C.L. Rev. at 186; Russell A. Eisenberg & Frances F. Gecker, The Doctrine of Necessity and Its Parameters, 73 Marq. L. Rev. 1, 4 (1989); Andrew J. Currie & Sean McCann, Hold on to Those Payments, Critical Vendors: Capital Factors v. Kmart, 22-Jun Am. Bankr. Inst. J. 1 at *34 (2003).  Thus, to be entitled to such payments, a creditor had to demonstrate that the obligation to pay was incurred within six months prior to the commencement of the receivership proceeding, in which case it was given an equitable priority over other creditors and was entitled to payment.  Alan N. Resnick, The Future of the Doctrine of Necessity and Critical-Vendor Payments in Chapter 11 Cases, 47 B.C.L. Rev. at 186; Andrew J. Currie & Sean McCann, Hold on to Those Payments, Critical Vendors: Capital Factors v. Kmart, 22-Jun Am. Bankr. Inst. J. 1 at *34.  These payments were made even before mortgagees were paid.  Id. at *34.  "The justification for [that] doctrine was that it would be inequitable to operating creditors, supplying the

necessary services and products for the railroad's continued existence and revenue generation, if the resulting operating revenue benefited secured creditors, who were not entitled to the operating revenue of the railroad until a receiver was appointed.  In essence, the rule gave pre-bankruptcy unsecured claims of vendors and other operating creditors that arose within six months before the receivership priority in payment over secured creditors."  Alan N. Resnick, The Future of the Doctrine of Necessity and Critical-Vendor Payments in Chapter 11 Cases, 47 B.C.L. Rev. at 187.  The six-month rule was legislated in Section 77(b) of the Bankruptcy Act of 1898 for railroad reorganization cases and survived through Section 1171(b) of the Bankruptcy Reform Act of 1978.  See Act of July 1, 1898, ch. 541, § 77B, 30 Stat. 544 (1899); Jeffrey N. Pomerantz, The Bare Necessities of Critical Vendor Motions – It's a Jungle Out There, 13 J. Bankr. L. & Prac. 73, 76 (2004); 11 U.S.C. § 1171(b) (2000).

The "necessity of payment doctrine" was first enunciated in Miltenberger v. Logansport Railway Co., 106 U.S. 286, 310-312 (1882), and it became an important part of railroad reorganizations and receiverships.  It permitted courts to allow receivers to pay certain pre-receivership unsecured creditors.  Alan N. Resnick, The Future of the Doctrine of Necessity and Critical-Vendor Payments in Chapter 11 Cases, 47 B.C.L. Rev. at 187.  Courts limited this doctrine's use, however, to secure only the continued delivery of supplies and services essential to the debtor's continuation in business.  In re B&W Enter. Inc., 713 F.2d at 537; In re Boston & Me., 634 F.2d at 1382.  The "necessity of payment doctrine" gives courts discretion to deviate from the otherwise applicable rules of priority by making early payments to certain creditors to achieve the greater goal of a successful reorganization.  Alan N. Resnick, The Future of the Doctrine of Necessity and Critical-Vendor Payments in Chapter 11 Cases, 47 B.C.L. Rev. at 187.  "Whereas the six months rule directly changes the priority of claims by paying ordinary course claims incurred within the six months prior to a railroad reorganization before secured claims, the doctrine of necessity permits payment of pre-bankruptcy unsecured claims only when such payment is needed so that trade vendors or other creditors will not refuse to supply critical goods and services after the debtor files for bankruptcy protection."  Id. at 187.

This doctrine at first was only applied in railroad reorganization cases for which success was considered vital to the public interest. Thus, giving preference to some creditors at the expense of others became acceptable because the public depended on continued rail operations. Id. at 187. With time, courts expanded the use of the doctrine of necessity to cases that do not involve railroad reorganization, and courts eventually further utilized the doctrine to protect the interests of creditors and reorganization efforts more generally. See In re CoServ, L.L.C., 273 B.R. 487, 493 n.7, 497 (Bankr. N.D. Tex. 2002). Unlike the six-month rule, the "doctrine of necessity" was never codified in the Bankruptcy Reform Act of 1978. See Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (effective October 1, 1979, codified as amended at 11 U.S.C. §§ 101 *et seq.* (2000)). Still, most courts that have expanded the doctrine of necessity beyond railroad reorganization cases have done so relying on the equitable power provided in Section 105(a) of the Bankruptcy Code. See In re Just for Feet, Inc., 242 B.R. 821, 824 (D. Del. 1999) (explaining that even if the doctrine of necessity is not codified in the Bankruptcy Code, courts have authorized pre-petition claims when necessary using their equitable powers under Section 105(a)).

*(B)*     *The* Kmart *Case*

Before the Kmart case, *supra*, bankruptcy courts routinely exercised their discretion in granting critical vendor motions under the "necessity of payment doctrine." See *e.g.*, In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3rd Cir. 1981); In re Just for Feet, Inc., 242 B.R. at 822; In re Ionosphere, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

In Ionosphere, the court explained the rationale behind allowing a Chapter 11 debtor-in-possession to pay prepetition claims. 98 B.R. at 174. The debtor in that case had already obtained court approval to pay the pre-petition salaries and benefits of active employees and the pending contested matter was whether striking employees were entitled to receive commensurate payments. Id. at 175. The court ultimately ruled against the striking employees, but in so doing, noted that Section 363(b) gives courts broad discretion to allow debtors to pay pre-petition claims in the ordinary course of business when the debtor "articulate[s] some

business justification." Id. at 175. The court further explained that equal distribution to creditors may be significant in a liquidation context, but in Chapter 11 "all other bankruptcy policies are subordinated [to] the rehabilitation of the debtor." Id. at 176.

In Just for Feet, Inc., the debtor operated a chain of retail stores selling athletic footwear and apparel. 242 B.R. at 822. The debtor relied on trade vendors such as Nike, Adidas, Reebok and Asics to stock more than 300 stores. Id. at 823. The debtor filed a critical vendor motion under Section 105(a) to pay all of its trade creditors in exchange for similar or better credit terms than the debtor was offered in the past. Id. at 824. In support of the motion, the debtor's president and CEO testified that it was critical that the company receive $50 million in new inventory before Thanksgiving to allow for a successful holiday season. Id. at 823. Several creditors and the United States Trustee objected, arguing that the court did not have authority to authorize the motion as a matter of law because Section 105(a) does not allow the court to alter priorities set by the Bankruptcy Code. Id. at 825. The court overruled the objection and explained that under the "necessity of payment doctrine", a court can use its "equitable power under Section 105(a) to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a Chapter 11 reorganization." Id. at 824, citing Miltenberger v. Logansport, 106 U.S. 286 (1882). The court found that, based on the testimony of the president and CEO, paying the claims of the footwear and apparel vendors was essential to the debtor's survival, especially given the approaching holiday season. Id. at 826. The court granted the motion as to these vendors and invited the debtor to offer additional evidence as to its other suppliers. Id.

In 2004, the Court of Appeals for the Seventh Circuit ("Seventh Circuit") established in Kmart, *supra*, a two-prong test that placed a high burden on debtors and caused much hand-wringing over the future of critical vendor motions. In Kmart, the debtors, a retailer, and thirty-eight of its affiliates and subsidiaries, moved on the first day of the bankruptcy case to pay the pre-petition claims of 2,330 vendors. 359 F.3d at 868. The debtor argued that the suppliers, if not paid overdue prepetition debts, would likely cease shipping goods to the retailer, which

would result in not being able to reorganize in detriment of all creditors.  Id.  The Bankruptcy Court for the Northern District of Illinois granted the motion and the debtors paid approximately $300 million to vendors on account of prepetition claims.  Id. at 869.  Meanwhile, all other unsecured creditors received only about $0.10 on the dollar.  Id.  Certain disfavored vendors appealed the bankruptcy court's ruling and the District Court for the Northern District of Illinois reversed it.  Id.  On subsequent appeal, the Seventh Circuit also ruled that the critical vendor order could not stand and affirmed the district court.  Id. at 874.  The Seventh Circuit reasoned that the bankruptcy court had allowed the motion without considering evidence as to whether such relief would benefit, or at least not harm, disfavored creditors.  Id. at 869.  The Seventh Circuit rejected the argument that a bankruptcy court can grant a critical vendor motion pursuant to Section 105(a) stating that the "'doctrine of necessity' is just a fancy name for a power to depart from the Bankruptcy Code".  Id. at 871.  Notwithstanding, the court found that 11 U.S.C. § 363(b)(1) allows preferential payments to vendors in limited circumstances.  Id. at 873.  The Seventh Circuit also indicated that in order to justify paying prepetition claims under Section 363(b), the debtor must demonstrate that: (1) the vendors in question would have ceased doing business with the debtor if the outstanding debts were not paid; and (2) disfavored creditors would be better off, or at least not worse off, as a result of the preference.  Id. at 863, 873.

*(C)*     *Extent of Section 105 in the First Circuit*

In Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, (1988), the U.S. Supreme Court ruled that "[w]hatever equitable powers remain in the bankruptcy courts must and can be exercised within the confines of the Bankruptcy Code" and that under Section 105 "a court may exercise its equitable power only as a means to fulfill some specific Code provision."  In Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1311 (1st Cir. 1993), the Court of Appeals for the First Circuit ("First Circuit") ruled that "Section 105(a) [does not] authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties."  The First Circuit also warned in

Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 403 (1st Cir. 2002), that the bankruptcy court's equitable powers pursuant to Section 105 must be exercised cautiously:

> [S]ection 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand. The authority bestowed thereunder may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code. Id. at 403.

Also see Hann v. Educ. Credit Mgmt. Corp. (In re Hann), 476 B.R. 344, 359 (B.A.P. 1st Cir. 2012) ("Section 105(a) provides the bankruptcy court broad authority to exercise its equitable powers --where necessary or appropriate-- to facilitate the implementation of other Bankruptcy Code provisions.")

*(D)      Critical Vendor Orders in the First Circuit*

In the First Circuit, the only published decision discussing critical vendor orders is In re Zenus Is Jewelry, Inc., 378 B.R. 432 (Bankr. D.N.H. 2007). In Zenus, the debtor, a jewelry retailer, sought to pay the prepetition claims of five vendors in return for extensions of credit. Id. at 433. The court declined to allow the payments, explaining that the case did not pose a critical vendor question because the evidence showed that vendors would provide inventory on a cash-on-delivery basis ("COD"). Id. at 434. In addition, the court also considered that there were other sources of the same product available to the debtor. Id. The court noted that the "necessity of payment" doctrine should only be applied under "extraordinary circumstances" and only to be used in "rare cases". Id. at 433-434, citing *inter alia*, the cases of Kmart, *supra*, and In re CoServ, *supra*.

The other two unpublished opinions in our First Circuit stem from the case of In re PMC Mktg. Corp., 2009 Bankr. LEXIS 2843, 2009 WL 2914232 (Bankr. D.P.R. 2009), aff'd 2009 U.S. Dist. LEXIS 119063, 2009 WL 5184458 (D.P.R. 2009). In that case, the Bankruptcy Court for the District of Puerto Rico applied the "doctrine of necessity" following the three-prong test followed in In re CoServ, 273 B.R. at 498: (1) the court has to determine whether it is critical that the debtor deal with that particular vendor; (2) evidence must be provided that, unless the debtor deals with the vendor, the debtor risks a probability of harm (or, alternatively,

a loss of economic advantage to the estate or the debtor's going concern value) which is disproportionate to the amount of the vendor's pre-petition claim; (3) the court must determine whether there is no practical or legal alternative by which the debtor can deal with the vendor other than by payment of the claim.  See 2009 U.S. Dist. LEXIS 119063 at *15, 2009 WL 5184458 at *6.  On appeal, the District Court for the District of Puerto Rico (the "District Court") ruled that "the Bankruptcy Court found that the facts supported a conclusion that the Debtor's petition … complied with the In re CoServ test [and was] unwilling to set aside the Bankruptcy Court's findings of fact as they were adequately supported by the record."  2009 U.S. Dist. LEXIS 119063 at **15-16, 2009 WL 5184458 at *5.  Acknowledging that "[t]here is no binding authority from the First Circuit preventing the Bankruptcy Court's application of the In re CoServ analysis under Section 105(a) of the Bankruptcy Code to the present case … [the District Court found] that the Bankruptcy Court's reliance on In re CoServ was appropriate." 2009 U.S. Dist. LEXIS 119063 at *18, 2009 WL 5184458 at *6.  The District Court further affirmed the use of Section 105 to substantiate Section 1107(a), which grants the debtor-in-possession the necessary powers to hold and operate the business for the benefit of its creditors and (if the value justifies) equitable owners.  2009 U.S. Dist. LEXIS 119063 at *17, 2009 WL 5184458 at *5.  The District Court also ruled that "[i]mplicit in the duties of a Chapter 11 trustee or a debtor-in-possession as set out in Sections 1106 and 704 of the Bankruptcy Code is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going concern value."  2009 U.S. Dist. LEXIS 119063 at *17-18, 2009 WL 5184458 at *5.  The District Court did not cite nor discussed the Kmart case.

(E)      Interrelation of Sections 105, 363 and 1107 for Critical Vendor Orders

This court is persuaded by the reasoning applied in In re Tropical Sportswear Int'l Corp., 320 B.R. 15 (Bankr. M.D. Fla. 2005), for payment to critical vendors and adopts its analysis to the instant case.

In Tropical Sportswear Int'l Corp., the court refused to use its equitable powers under Section 105 by itself to order payment to critical vendors.  Instead, it ruled that a bankruptcy

-10-

court may utilize Section 105(a) together with Section 363 of the Bankruptcy Code to justify the grant of a critical vendor order under appropriate circumstances.  320 B.R. at 20.  "Bankruptcy courts recognize that Section 363 is a source for authority to make critical vendor payments, and Section 105 is used to fill in the blanks.  After all, the Bankruptcy Code does not contemplate every business crisis that could arise in a bankruptcy case, and this Court is of the opinion that Congress intended that the Code accommodate the economic realities faced by debtors in reorganization cases."  Id. at 20.  Section 363(b) provides that "the trustee [or debtor-in-possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  The court reasoned that "[t]he practical justification of allowing payment of critical vendors under Section 363 is the recognition that there are instances where vendors not paid for prior deliveries will refuse to make new ones.  In such cases, manufacturers … that have a critical need for certain products will be unable to continue in business without the continued supply of those products.  In such cases, even the disfavored creditors are better off by paying the critical vendors since the payments enable a successful reorganization."  Tropical Sportswear Int'l Corp., 320 B.R. at 19-20.  Thus, the court applied the following criteria for payment of pre-petition amounts to critical vendors:

> [T]he Court will exercise its authority pursuant to Sections 105 and 363 of the Bankruptcy Code to issue orders providing for the payment of pre-petition amounts to critical vendors only if an evidentiary record establishes that: (i) the payments are necessary to the reorganization process; (ii) a sound business justification exists in that the critical vendor(s) refuse to continue to do business withthe debtor absent being afforded critical vendor status; and (iii) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered.
>
> …
> [A] bankruptcy court's use of its equitable powers to permit the payment of pre-petition amounts to critical vendors should be exercised only when: (1) those critical vendors are indeed critical and have refused to do business with a debtor absent payment; and (2) only if the court finds that the disfavored creditors will be at least as well off as a result of the court's granting critical vendor status to the select vendors.  Through the proper exercise of its equitable powers under Sections 105 and 363, permitting a critical vendor to be paid for pre-petition amounts due, a

bankruptcy court facilitates the reorganization for the benefit of the debtor's estate and the creditor body as a whole. The result is that a debtor's estate is maximized, and even the disfavored creditors will receive greater payments on their respective claims. In re Tropical Sportswear Int'l Corp., 320 B.R. at 17, 20.

In addition, the court also considered that the terms of the payments to the critical vendors were negotiated at arms-length, and the debtors' bankruptcy estates would be improved for the benefit of all creditors --including the disfavored creditors-- as a result of the court's authorization of the payments to the critical vendors. Id. at 17-18.

The court also adopts the reasoning of Puerto Rico's District Court in In re PMC Mktg. Corp. to include Section 1107(a) of the Bankruptcy Code as an additional a source for authority to make critical vendor payments, which establishes the duty of a debtor-in-possession to protect and preserve the estate, including an operating business's going concern value. 2009 U.S. Dist. LEXIS 119063 at *17-18, 2009 WL 5184458 at *5.

*(F)*  Application of the *Tropical Sportswear Int'l Corp.* Analysis

The court will first consider the following factors established in Tropical Sportswear Int'l Corp., to wit, whether: (i) the payments are necessary to the reorganization process; (ii) a sound business justification exists in that the critical vendor(s) refuse to continue to do business with the debtor absent being afforded critical vendor status; and (iii) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered. 320 B.R. at 17. From the record and the hearing held on October 18, 2013, the court finds that the Debtor demonstrated all three requirements. The denominated critical vendors are: (a) Islandwide Express, Inc., Five Stars Accessories, Dali Overseas Corp., Magic Transport, Inc., Riflessi, NEU Enterprises, Inc., H&H Distribution, LLC, Triple Gear, Inc. and Safire Lounge. The Debtor's *Unsworn Declarations Under Penalty of Perjury* attached to the *Motion to Denominate Critical Vendors* (Docket No. 16, pp. 7-10) and the *Reply to Opposition to Motion to Denominate Critical Vendors* (Docket No. 46, pp.7-9) explain the nature of all these vendors and the products and services they provide to the Debtor. Although the *Declaration* was not submitted into evidence at the October 18, 2013 hearing, these critical vendors' nature and the

products and services they provide were not disputed.  In addition, Mr. Michael Silva, the Debtor's president, satisfactorily explained at the October 18, 2013 hearing how and why the payments to the critical vendors were necessary for a chance at reorganization and identified the following considerations to denominate them as such: merchandise availability on a timely basis (reliability), fashion, size scales for the Puerto Rican market (*vis à vis* the US market), credit (all the critical vendors provide credit to the Debtor), quality of their merchandise, quantity available on the island, reliability (especially in the shipping), ability and willingness to do special cuts in special prices.  See Docket No. 64, p. 6.  The court finds that Mr. Silva's testimony was credible, objective and non-arbitrary.  Moreover, the letters issued by the critical vendors stating that they will not be able to continue to supply the Debtor if they were not granted critical vendor status (Docket No. 16, pp. 11-18) constitutes a sound business justification for a critical vendor order.  Disfavored creditors are at least as well off as they would be if the critical vendor order is not entered.  In other words, "the disfavored creditors are better off by paying the critical vendors since the payments enable a successful reorganization". Tropical Sportswear Int'l Corp., 320 B.R. at 19-20.  To that extent, the court agrees with the reasoning in Tropical Sportswear Int'l Corp.: "this is a use of Section 363(b)(1) similar to the theory underlying a plan crammed down the throats of an impaired class of creditors: if the impaired class does at least as well as it would have under a Chapter 7 liquidation, then it has no legitimate objection and cannot block the reorganization."  Id. at 20.  Withal, there is no evidence in the record that that the Debtor's proposed budget for pre-petition payments for the denominated critical vendors is not arms-length.  See Debtor's **Exhibit D** submitted at the October 18, 2013 hearing.

### Conclusion

In view of the foregoing, the Debtor's *Motion to Denominate Critical Vendors* (Docket No. 16) is hereby granted.  Critical vendors' payments are hereby allowed as proposed in **Debtor's Exhibit D**, p. 3, submitted into evidence at the October 18, 2013 hearing.

SO ORDERED.

In San Juan, Puerto Rico, this 20th day of November, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge